IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                             No. 17-cr-2690 RB

JERRY O. TWADDLE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on two motions giving notice of the Government's intent to introduce expert testimony and requesting pretrial admissibility rulings on such evidence.[1] First, the Government's Notice of Expert Witness Testimony of Forensic Chemists/Scientists and Motion in Limine for *Daubert*/*Velarde* Ruling on its Admissibility. (Doc. 187.) Second, the Government's Notice of Intent to Offer Expert Testimony of DEA Special Agent Joseph Montoya and Motion in Limine for Ruling on Admissibility of Evidence. (Doc. 188.) In both motions, the Government has provided notice under Federal Rule of Criminal Procedure 16(a)(1)(G) that it intends to introduce expert testimony at trial, and requests that the Court rule the witnesses are qualified experts and that their testimony is admissible under Federal Rule of Evidence 702. (*See* Docs. 187 at 1; 188 at 1.) Defendant has not opposed either motion. After considering the submissions of counsel and relevant law, the Court will **grant** the Government's motions as to the expert testimony that remains relevant to this case.

---

[1] The Government has filed three notices of intent to offer expert testimony and related motions in limine seeking pretrial admissibility rulings. (Docs. 187; 188; 189.) However, these motions were filed before nine of the ten co-defendants reached plea deals. As such, the Government's Notice of Intent to Offer Expert Testimony on Interstate Nexus (Doc. 189) is moot, since Defendant is not charged with any firearms offenses. The Court will only address proposed expert witness testimony in the two motions that correspond to the charges against Defendant and the witnesses included in the Government's Witness List (Doc. 276).

## I. Factual Background

Defendant is charged in Counts 1, 28, and 31 of the Indictment with several violations of federal narcotics laws related to possession and trafficking of methamphetamine. (Doc. 2 at 2, 20–21.) These charges include violations of 21 U.S.C. § 846, conspiracy to violate federal laws pertaining to controlled substances; § 843(b)(1), using a communication device to further the commission of a drug trafficking crime; and §§ 841(a)(1) and (b)(1)(A), possession with intent to distribute 500 grams and more of a mixture and substance containing methamphetamine. (*Id.* at 2, 20–21.)

In Count 1, Defendant is charged with conspiring to distribute methamphetamine. (*Id.* at 2.) In Count 28, Defendant is charged with using a telephone to further the commission of a drug trafficking crime by allegedly communicating with a former co-defendant to coordinate Defendant picking up two pounds of methamphetamine from the co-defendant's residence and leaving $5,000 in its place. (*Id.* at 20; *see also* Doc. 256 at 2.) After he retrieved the methamphetamine, Defendant then allegedly threw it from his vehicle during a high-speed chase after investigating officers attempted a traffic stop. (Doc. 256 at 3.) Based on this series of events, Defendant is charged in Count 31 with "unlawfully, knowingly, and intentionally possess[ing] with intent to distribute a controlled substance, 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine." (*See* Doc. 2 at 21.)

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the Government provided Defendant with a written summary of the testimony it intends to introduce under Federal Rule of Evidence 702, which governs expert witness testimony. (*See* Docs. 187; 188; 189.) At the same time, the Government requested pretrial orders that its expert witnesses be qualified as experts based on their experience and qualifications, and that their anticipated testimony be ruled

admissible based on the pleadings. (*See* Docs. 188 at 6; 187 at 6.) Defendant has not responded to the Government's motions seeking pretrial admissibility orders, nor objected to the anticipated testimony of any of the proposed expert witnesses.

Of the nine forensic chemists and scientists initially named as potential expert witnesses, the Government has indicated that, at trial, it will introduce testimony from only three of these experts: (1) DEA Forensic Chemist Denise Williams, (2) DEA Forensic Chemist Angela Cassady, and (3) New Mexico Department of Public Safety Forensic Scientist Patrick Chavez. (Doc. 187 at 1–2.)

The Government anticipates that Ms. Williams, Ms. Cassady, and Mr. Chavez will testify "regarding the detection, identity, weight, and purity of a controlled substance." (*Id.* at 6.) Summaries of Ms. Williams's and Ms. Cassady's anticipated testimony suggest that they will give opinions based on laboratory reports they prepared after "examin[ing] and analyz[ing] the substance(s) contained in the exhibit(s) which were submitted for analysis." (Doc. 187-1 at 13, 17.) Both are Senior Forensic Chemists employed by the DEA, and the Government has submitted their qualifications and curriculum vitae. (*See id.* at 13–20.) A summary of Mr. Chavez's anticipated testimony suggests that he will give his opinion as to evidence he analyzed for this case, and his "[t]estimony may include role in the lab, information from the CV, chain of custody, evidence handling and storage, technical/administrative review, and other relevant information as necessary." (*Id.* at 34.) Mr. Chavez is a Forensic Scientist employed by the New Mexico Department of Public Safety, and the government has submitted his qualifications and curriculum vitae. (*Id.* at 33–39.)

The Government has also indicated that it will offer the expert testimony of DEA Special Agent Joseph Montoya, who will testify regarding the following subjects:

1. The manner in which individuals and organizations package, conceal, transport, and distribute methamphetamine.
2. The bulk and street values of the methamphetamine seized in this case.
3. The quantities of methamphetamine that are typically sold and consumed.
4. The amount of methamphetamine seized in this case is consistent with the intent to distribute methamphetamine.
5. The common ways in which individuals attempt to avoid detection by law enforcement by using prepaid telephones or fictitious names.
6. The coded language and terminology that is typically used by narcotics traffickers and the analysis of specific coded language intercepted on the wiretaps in this case.

(Doc. 188 at 4.) [2] The Government has submitted Mr. Montoya's curriculum vitae and an overview of his qualifications, including that has been a DEA Special Agent since 1999 and has participated in "over 500 investigations involving the possession, manufacture, distribution, and importation of controlled substances, . . . [and] been involved in over 200 undercover operations as a transporter/courier, facilitator, seller, or purchaser of controlled substances." (*Id.* at 2.)

In both motions providing notice and seeking pretrial rulings on the admissibility of the expert testimony, the United States submits that the proposed expert witnesses have "a reliable basis in knowledge and experience" in their fields, and that the expert witness testimony they will provide is relevant and admissible under Rule 702. (Docs. 187 at 1; 188 at 1.)

## II. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony, and provides that a qualified expert witness may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[2] As noted above, this Order does not address the several topics related to firearms upon which Mr. Montoya was originally prepared to testify. The Court does not find any expert testimony regarding firearms relevant or admissible in this case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–97 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999).

As part of its evidentiary gatekeeping function under Rule 702, the Court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The Court has "wide latitude . . . in exercising its discretion to admit or exclude expert testimony." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). Provided that "the court has sufficient evidence to perform 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand[,]'" it may fulfill its gatekeeping role at various stages of the litigation process, including "when asked to rule on a motion in limine." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (quoting *Daubert*, 509 U.S. at 597). Therefore, the Court will rule on the admissibility of the Government's expert testimony in this Order, but if necessary will exercise its discretion to consider any remaining or unanticipated issues regarding the testimony that may arise at trial.

## III. Discussion

Here, the proposed expert testimony on the chemical analysis of seized drugs and the typical operations of drug traffickers are both relevant to the case. Evidence is relevant if it "has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence describing the drugs seized in connection with the charged methamphetamine trafficking offenses will tend to make it either more or less likely that Defendant was in possession of the substances charged, in the amounts charged. Similarly, evidence of how drug trafficking operations typically function will shed light on the likelihood that Defendant was participating, or knew he was participating, in a trafficking operation.

The remaining question for the Court to resolve, then, is whether the proposed expert testimony is reliable. *Daubert* sets out a non-exhaustive, "flexible" set of factors that trial courts may consider to determine whether proposed expert testimony is based on reliable methods and principles:

> (1) whether the particular theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community.

*United States v. Taylor*, 663 F. Supp. 2d 1170, 1173 (D.N.M. 2009) (citing *Daubert*, 509 U.S. at 593–94). However, "whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho*, 526 U.S. at 139.

In regard to the forensic scientist and chemists, as the Government points out, "there are no novel scientific principles at play." (Doc. 187 at 6.) Each of the proposed expert witnesses are employed in the field of forensic analysis and are fully qualified to detect and analyze controlled substances. Thus, the Court rules that the summarized expert testimony of Ms. Williams, Ms. Cassady, and Mr. Chavez (*see* Doc. 187) regarding specific exhibits and substances they were required to analyze has a reliable basis and will be admitted.

The Court next finds that Special Agent Montoya is qualified, based on his experience and training, to provide an expert opinion on matters relating to narcotics trafficking. *See Daubert*, 509 U.S. at 589. The Tenth Circuit has upheld the relevance and reliability of expert testimony from law enforcement officers to explain the significance of "tools of the trade," *see United States v. Becker*, 230 F.3d 1224, 1231 (10th Cir. 2000), as well as to describe "typical indicia of drug trafficking activity," *see United States v. Lovern*, 590 F.3d 1095, 1102 (10th Cir. 2009). *See also*

*United States v. Sturmoski*, 971 F.2d 452, 459 (10th Cir. 1992). Defendant has not objected to introduction of this expert witness testimony, but the Court reiterates that, if necessary, it will exercise its discretion to consider any remaining or unanticipated issues that may arise at trial.

**THEREFORE**,

**IT IS ORDERED** that DEA Forensic Chemist Denise Williams, DEA Forensic Chemist Angela Cassady, New Mexico Department of Public Safety Forensic Scientist Patrick Chavez, and DEA Special Agent Joseph Montoya are qualified as expert witnesses to provide testimony under Federal Rule of Evidence 702;

**IT IS FURTHER ORDERED** that the proposed testimony of the expert witnesses as described in the Government's disclosures is reliable and admissible under Rule 702, but the Court will take up any remaining or unanticipated issues that may arise regarding this testimony at trial.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**